Our fifth case for this morning is United States v. Darral Morris. Mr. Sims? Thank you, Your Honor. May it please the Court? Counsel. The procedural steps that are relative to the imposition of an enhanced sentence under Title 18 of the United States Code, Section 924E, are set by statute, and they vary from district to district, and that is the crux of my entire argument, Your Honor. The fact that they vary from district to district is evidence that it's vague, and if it's vague, it's unconstitutional. A person can qualify in the state of Missouri, Eighth Circuit, as an armed career criminal, and under those same set of facts, in East St. Louis, Seventh Circuit, would not qualify. So you're talking about the Hudspeth Rule, basically? You're talking about what does it take for things to be separate counts of delivery? Correct, Your Honor. Mr. Morris's deliveries were four days apart. You know, there might be a case that really presents what you're talking about, but it's hard for me to believe that four days apart wouldn't be regarded as separate by just about anybody. And I'm not sure within the court where Mr. Morris was appearing that there was any doubt that these were separate offenses. Well, Your Honor, actually it was that we went just on the four corners of the charging documents, because there was one document that was in the lower court that stated that both of the transactions occurred on the same date. That caused confusion, and the court actually ordered the government to brief that issue. So we had to go further than the charging documents. They even had to go into the actual pleadings and the transcripts of the sentencing to see what happened and when. But it gets resolved eventually that it's four days apart. It gets resolved by the court making that decision. Right, that's what the court has to do. That's correct. Under protest, I assume.  But the court made a finding. The court made that finding. Now, my argument to that, though, Your Honor, is the fact that now you're dealing with the relationship between the two convictions. You're not dealing with the actual conviction. And once you start dealing with the relationship, then I believe you fall into an apprendi violation, because now you're not talking about just the fact that a person was convicted. You're talking about the relationship between those two, and that should be either omitted by the defendant or proven beyond a reasonable doubt by the fact-finders or a jury. So you don't think that falls under almondares torres as just the underlying facts? Do you have a recidivism situation such that the Armed Career Criminal Act applies? Has any court said that? Actually, Your Honor, the courts have been split. I've had an Eighth Circuit which said that under United States v. Willoughby, the Eighth Circuit dealt further than the charging document. It held that defendants prior to drug sales to two different individuals were part of a continuous course of conduct rather than separate and distinct criminal episodes. No, I understand. Weren't those on the same day? I understand, Your Honor, but under HUSPIT, if a defendant has the opportunity to cease his criminal behavior, then it's deemed to be separate convictions. No, you're exactly right that the rules have varied about that. But I guess what I was asking was whether any circuit has said that the determination whether there's one offense or two prior offenses, one prior or two priors, is the kind of thing that has to be resolved by the jury or whether it falls within the almandares torres rule that it's just part of determining whether there are prior offenses that you look to. I don't believe that that argument has been brought up in other circuits. I believe that this would be something that you would be sitting president. Okay, I just wanted to know. My argument, Your Honor, is that the fact that there is a difference from circuit to circuit is evidence of vagueness. And if the court were to look at that under that light, then they would determine that it violates the Constitution and specifically the Fifth Amendment. I'm asking the court to... I see the problem I have with that principle you're articulating. If we really take it to its furthest extent, any time you have variations on admittedly significant issues, then something's going to be deemed vague, right? Well, Your Honor, that is the truth. Well, even if it's clear, the problem is there's vagueness in the sense of Johnson, that nobody knew what belonged in the residual clause and didn't. And everybody was throwing darts at the wall for years until the Supreme Court finally said, forget it, we just can't do this. And, I mean, some circuits have developed, well, this offense does, that offense doesn't. But there was no principle. Whereas in this instance, rightly or wrongly, I mean, once you know you're in the Seventh Circuit, you know that Hudsbeth applies. And you know that this opportunity to desist rule applies. And I don't know that that's such an unclear rule, at least not in these facts. Well, my response to that, Your Honor, is Hudsbeth itself is vague because I can argue, as I stated in my brief, unless you shoot two people with one bullet, you always have the opportunity to desist that criminal behavior. Well, and you make a good point. And maybe, you know, the person who sells, you know, one dime bag of crack to somebody and then turns around and two minutes later sells another one, you know, maybe that's a tough case. But why, as applied here to Mr. Morris' case, is a four-day apart situation something that's not clear? Well, what I would suggest, Your Honor, is that in order to get to the four-day, you now have to take – when does it become too far apart? And under Hudsbeth, like I said, even if it's two seconds, you have a chance to stop that criminal behavior. The argument that they give is when the guy comes into the poker room and tells everyone to empty their pockets, that, well, this – he doesn't have time to change once he tells everyone – he does. I can come into this room, Your Honor, choose to rob these people, and say, well, not to learn in court. Thank you. And walk out. So what I'm saying, Your Honor, is that – and I know that it's setting precedent, but I think in this type when we're dealing with people's life and freedom, especially when the consequences is so great from a 10-year maximum to a 15-year minimum up to life, then there should be some clarity. Because the common man, the defendant, when he hears something that's being ran concurrent, he takes it that everything is together and it's one sentence. But the learned counsels of the different districts, they cannot agree. Then what choice does the common man have? And I'd like to reserve the rest of my time for a little while. All right. That's fine. Ms. Wasserman. May it please the court, counsel. My name is Emily Wasserman, and I'm here on behalf of the U.S. government. Here, there is no question that there is no vagueness or ambiguity when the Armed Career Criminal Act was applied to Morris. He had three predicate offenses. Two of those offenses were charged at the same time. However, they occurred four days apart. The Seventh Circuit has dealt with cases with much smaller time frames than here, including 10 minutes, 36 hours, 36 minutes, two days, two sales, 45 minutes apart. In this case, there was four days. He certainly had the opportunity to withdraw from his criminal conduct over a four-day period of time. And the quantity of drugs for each of these transactions? It was over one gram and less than 15 grams for each instance. So, I mean, one of the things this case reminds one of is the extent to which the Armed Career Criminal Act and the career offender provisions and the guidelines need to move along in lockstep. We haven't been 100% consistent about that, I think. The Seventh Circuit has not been? I mean, we've suggested in some cases that maybe there are situations where they would be different, particularly if you're looking at the commentary to the career offender guidelines as opposed to the language of the guideline itself. I would say I would look to Elliot, which takes Hudspeth and explains it a little more. And it really is about the opportunity to withdraw. That's what you say in Elliot. Do you have an opportunity to withdraw? And certainly, if I came in here and robbed these people and didn't rob you, that's an opportunity to withdraw. But how do you do the walking into the bar and saying, everybody put your wallet on the table? That's one incident, right? We would not dispute that fact, but this is very clearly two instances. And it's just not a situation where there's any confusion whatsoever. I guess the point is, if he was across the river in St. Louis, it might have been different. I mean, a lot of months in prison are at stake here. That's correct. Over very tiny amounts of crack cocaine. That is the Armed Career Criminal Act. He did not have to partake in that criminal activity. He did it twice. He burgled home. So how about this mistake, this typo, or whatever it was? It seems that that was confusing, too, to him, thinking that the range would be 118 to 235 instead of 188 to 235. Let's look by everybody. It was a typo. Typos happen, and that is why plea agreements have the language that they have, because they're anticipating that not everything is clear yet, the ultimate sentence guidelines range has not been determined yet, and the promise is to recommend a sentence at the low end of the guideline range. The promise is not that the government said it's going to be 118 months. And at the plea hearing, the court, the district court even said, should you be found to be an armed career criminal, you have a mandatory minimum of 15 years. Yeah, that's the thing that comes closest to saving this to me, because it does seem quite plausible to think that if he thought that he was looking at a low end of 118, that would motivate a guilty plea, whereas if he thought it was a 15-year, 180 minimum, he might not have wanted to plea. He might have wanted to take his luck with a trial. And he does move. I mean, sometimes people don't, but he did move to withdraw the plea. But that has happened in other cases. Barnes, Patterson, White, every single one of those instances, there was a mistake as to what the ultimate guideline range would be. The sentencing guideline range was much larger than what it was. But this isn't quite the same as a mistake. This is just a flat-out mistake. This would have been an illegal sentence, 118 months. It's a Scribner's error. Well, but it would have been, there was no way he was going to get that. In most of the cases you're talking about, somebody thought, you know, it was going to be an offense level 28, and it turns out it's offense level 32 or something like that. And it's just a calculation of how to apply the guidelines, whereas this is actually a statutory error. However, the district court did ask the defendant if he had gone over the sentencing guidelines with his counsel. And the 118 may have been a Scribner's error, but the 31 offense level was not. And if you look up what that is, it says in those guidelines, 188 months. And the plea agreement itself said multiple times, the ultimate determination is by the court. The court could impose a maximum penalty, and that penalty would have been life, and the defendant would not be entitled to withdraw his plea agreement. We should await the 2255, right? That's what you're saying? That's not for me to say. Oh, but if his lawyer gave him advice it was that bad, it wouldn't stun me to see it come along. We don't know either, of course. I don't think we get there, or we don't think we get there, because even though it is a slightly different situation in that it was a Scribner's error and not a mistake in the ultimate offense guideline, Barnes, White, and Patterson all say that the offense, the anticipated non-binding guideline range is not an essential term of the plea agreement, where the defendant knowingly and voluntarily entered into the plea agreement. He was informed of the nature and extent of the culpability he was admitting to in the plea agreement, and he was specifically informed of the contingent nature of the sentence. And he was. The court told him over and over and over, on your best day you get probation and nothing, and on your worst day you get life and a fine of $250,000. And I don't have to follow what the prosecutor tells me. I can do anything within the law, within the sentencing guidelines. Are you accepting this plea based on knowing that what they recommend might not transpire? And Morris pled guilty, knowing those facts. And that range without the enhancement would have been what? Just remind me of that number. You know what? That would have been the 118 to 235, right? It would have been 188. Oh, you mean prior to the armed career criminal? I think it was 36. I don't know off the top of my head. I can find it for you if you give me a few seconds. It was quite a bit lower. Yeah, and these other offenses, the other two crack offenses for the small amounts, just remind me, what was his sentence? Four years, I believe. But if he had not pled guilty, he was on the fence for 30 years. Where is this? I know I have it. It's all right. I'm sorry. I was just curious because I know the government has to move for the enhanced, for the career criminal enhancement, and I was just curious what his sentence would have been without that because that's an active motion by the government to put him in that category. All right. Thank you. If there are no further questions. Okay, thank you very much. Thank you very much. We request that you confirm the district court sentencing. Mr. Sims, anything further? When counsel tells the defendant one thing and the judge tells the defendant one thing, you can believe me that the defendant relies on the judge before he relies on his own counsel, before he relies on the prosecutor. For the judge to confirm 118 and the defendant to rely on it, that's just what a common man would do. I would like to conclude by saying that, back to my original argument, that Congress created the Sentencing Commission to delve into these matters and to come up with a uniform thing. The Sentencing Commission dealt with this very issue, and they stated that a prior conviction considered as part of a single sentence for the purpose of criminal history points counts as predicate for the career offender and other guidelines if it independently would have received criminal history points. But more importantly, however, if more than one prior within a group of offenses considered as a single sentence is a crime of violence or a controlled substance under 4B1.2, only one may count as a predicate offense. That's what Congress intended. Thank you, Your Honor. All right, thank you very much. And you were appointed, were you not, Mr. Sims? Yes, I was. We appreciate very much your help to your client and to the court. Thank you. And thanks as well to the government. We will take the case under advisement.